Submitted on the record September 21, ballot title certified November 18, 2004

Steven NOVICK,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S51686 (Control))

Michael D. CREW,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent,*
*and*

Arwen BIRD,
*Intervenor.*

(S51690)
(Consolidated for Opinion)

100 P3d 1064

Lawrence Wobbrock and Richard Lane, Lawrence Wobbrock Trial Lawyer, P.C., Portland, filed the petition for petitioner Novick.

John A. DiLorenzo, Jr., Davis Wright Tremaine, LLP, Portland, filed the petition for petitioner Crew. With him on the petition was Timothy R. Volpert.

Denise G. Fjordbeck, Assistant Attorney General, Salem, filed the answering memoranda for respondent. With her on the answering memoranda were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, filed the memorandum for intervenor.

DURHAM, J.

Riggs, J., concurred in part, dissented in part, and filed an opinion.

**DURHAM, J.**

The court has consolidated for opinion two petitions for review of a ballot title under ORS 250.085(2). Petitioners Novick and Crew are electors who are dissatisfied with the Attorney General's certified ballot title. Because petitioners timely submitted written comments regarding the draft ballot title, they are entitled to seek review in this court. ORS 250.085(2). Intervenor Bird has intervened in support of the objections that petitioner Novick filed and in opposition to the objections that petitioner Crew filed.

The proposed measure, if adopted, would amend ORS 20.340 to impose an upper limit of $100,000 on the attorney fees, exclusive of actual expenses and costs, that a lawyer could charge to the plaintiff in a civil action for personal injury or wrongful death, except for any class action. The full text of the proposed measure appears as an Appendix to this opinion. For that proposed measure, which the Secretary of State has delineated as Initiative Petition 3 (200), the Attorney General certified the following ballot title:

"LIMITS COMPENSATION OF ATTORNEY(S) FOR INDIVIDUAL PLAINTIFF IN ALL PERSONAL INJURY OR WRONGFUL DEATH CLAIMS

"RESULT OF 'YES' VOTE:   'Yes' vote limits maximum compensation to attorney(s) for plaintiff in a personal injury or wrongful death claim (other than certified class action) to $100,000.

"RESULT OF 'NO' VOTE:   'No' vote retains current law, which imposes no set monetary limitations on plaintiff's attorney fees for claims arising out of personal injury or wrongful death.

"SUMMARY:   Current law places no limit on fee agreements between injured individuals, their spouses, or legal representatives and attorneys who agree to represent them, unless resulting fee is excessive or illegal. Measure limits attorneys' fees in all claims for personal injury or death to a maximum of $100,000, regardless of the result achieved. Measure does not apply to certified class actions. Measure applies to arbitration, mediation, and settlement, as well as litigation. Limitation applies to each individual

claim made, regardless of the number of attorneys representing the injured individual and regardless of the number of individuals or entities against whom claim is made. Limitation does not apply to attorney fees for attorneys for the individuals or entities that caused the injury or death. Other provisions."

Petitioner Novick challenges the Attorney General's "yes" and "no" vote result statements. Petitioner Crew challenges the caption, "yes" vote result statement, and summary of the Attorney General's ballot title. We review the Attorney General's ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2). ORS 250.085(5).

## NOVICK PETITION

■ Petitioner Novick asserts that the Attorney General's "yes" vote result statement fails to describe the result if the voters approve the proposed measure, as ORS 250.035(2)(b) requires. According to petitioner Novick,

"[t]he true 'result' of passage of the measure would be to establish an unequal system in which defendants in personal injury or wrongful death cases would be able to spend unlimited amounts on attorneys, but plaintiffs would not. The creation of such a two-tiered system is a fundamental change in the law, which this section should make clear."

(Emphasis omitted.) The Attorney General responds that the "yes" vote result statement is adequate because it "specifically states that the limitation applies only to plaintiff's counsel."

For the following reasons, we agree with the Attorney General. The proposed measure, if adopted, would limit the attorney fees of *lawyers for plaintiffs* in personal injury and wrongful death litigation. Because the proposed measure would not limit or have any other effect on fees charged by lawyers for defendants or other parties in personal injury or wrongful death litigation, the inequality of which petitioner Novick complains is undeniable. The legal question is whether the Attorney General must identify that inequality as a result of the approval of the proposed measure in the

"yes" vote result statement. To address that question, we must examine the legislature's intent in requiring a ballot title to include a "yes" vote result statement.[1]

ORS 250.035(2)(b) states that a "yes" vote result statement is "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." The legislature provided no special statutory definition of the term "result." Consequently, we assume that the legislature intended to use that term of common usage in accordance with its ordinary dictionary definition. The dictionary defines a "result" as:

> "[A] decision or resolution of a deliberative legislative body * * * something that results as a consequence, effect, issue, or conclusion * * * beneficial or tangible effect : FRUIT * * * something obtained, achieved, or brought about by calculation, investigation, or similar activity * * *."

*Webster's Third New Int'l Dictionary* 1937 (unabridged ed 1993).

In determining what the legislature intended in requiring a description of the "result" of the approval of a proposed measure, we also must consider other contextual clues about the legislature's intent, including those in related statutes. ORS 250.035(2)(d) provides that a ballot title also must contain "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major *effect*." (Emphasis added.) The term "effect" in that statute means "something that is produced by an agent or cause : something that follows immediately from an antecedent : a resultant condition : RESULT, OUTCOME * * *." *Webster's* at 724.

---

[1] Although decisions from this court determining whether particular "yes" vote result statements complied substantially with the requirements of ORS 250.035(2)(b) are legion, it does not appear that this court has attempted to construe that statutory wording according to the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We take this opportunity to do so, both because the issues that these petitions present call for such a construction and in the hope that by clarifying the statutory standard—as opposed to merely applying that standard to particular proposed measures—both the Attorney General and others who participate in the ballot title process will be able to focus their efforts accordingly and reduce the need for this court to resolve disputes.

The definitions set out above do not draw a bright line between, on the one hand, the "result" of a proposed measure's approval and, on the other hand, its "major effect." The legislature's use of distinctive terminology in describing the elements of a "yes" vote result statement and summary signals its intent to require messages about the proposed measure that are distinctive, at least to some degree, in those separate parts of the ballot title. However, it also is clear that the definitions of "result" and "effect" overlap; each definition incorporates the other term either as a synonym or as an important descriptor of meaning.

The legislature's choice of terminology in this context, which has evolved over time, demonstrates that the legislature intended to require the Attorney General to determine, in the first instance, the consequences of enactment of a proposed measure that require description in the "yes" vote result statement and also those consequences of enactment that belong in the summary. As noted, the Attorney General's authority in that regard is not unfettered. The legislature's intent, rather than the discretion of the Attorney General, controls whether a particular descriptive message refers to a "result" or a "major effect" of a proposed measure.

In addition, the legislature imposed different word limitations on the result statements (25 words) and summaries (125 words). The shorter, 25-word limitation in ORS 250.035(2)(b) indicates that the result of a proposed measure's enactment that belongs in the "yes" vote result statement is that outcome that is the most significant and immediate, or that carries the greatest consequence, for the general public. Stated differently, the legislature intended the 25-word "yes" vote result statement to notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon. By contrast, the legislature's allotment of 125 words to the summary in ORS 250.035(2)(d) signals an intention to require the Attorney General to disclose in greater detail the proposed measure's major effects. Logically, those would include additional important consequences or details that the result statement does not convey and helpful contextual information about the impact of the proposed measure on existing law. As noted, the Attorney General's choices in

those respects are subject to review by this court for substantial compliance under ORS 250.085(5). A party does not demonstrate a failure of substantial compliance merely by showing that some other choice by the Attorney General would have been appropriate.

With that overview of ORS 250.035(2)(b) and (d) in mind, we turn to Novick's specific objections to the "yes" vote result statement. In support of his theory that the proposed measure would create a discriminatory, two-tier system of legal representation in many personal injury civil cases, Novick argues that the "yes" vote result statement should incorporate the phrase "defendants' attorney fees unlimited." The proposed measure, however, would enact no provision stating that "defendants' attorney fees [will be] unlimited" if voters approve the proposed measure. Instead, the proposed measure's unequal treatment of attorney fees in civil litigation arises from its express limitation of plaintiffs' attorney fees and its silence about attorney fees payable to lawyers for defendants and other parties.

Novick relies on *Novick v. Myers*, 330 Or 351, 7 P3d 518 (2000). In that case, the Attorney General's result statements indicated that the proposed measure limited "certain" campaign contributions and expenditures. This court determined that the result statements were insufficient because the word "certain" failed to make clear that "the applicability of differing limits and prohibitions * * * would turn on the status of the contributor." *Id.* at 356. Novick contends that the "yes" vote result statement in this proceeding similarly fails to make clear that the applicability of the attorney fee limitation depends on the party that the lawyer represents.

*Novick* is distinguishable. Under the proposed measure in that case, the applicability of various limits and prohibitions on political contributions turned on the status of the contributor. The proposed measure expressly created the categories of contributors to which the differing limits and prohibitions applied. The court's concern in *Novick* focused on the insufficiency of the term "certain" to alert voters about the key factor that triggered the proposed measure's new limitations. That is not true here. The Attorney General's "yes" vote result statement for Initiative Petition 3 (2004) discloses

that the proposed measure limits "compensation to attorney(s) for plaintiff * * *."

The Attorney General has chosen to address the issue that Novick raises in two ways. First, the Attorney General described the proposed measure's express limitation on plaintiffs' attorney fees in the "yes" vote result statement. Second, the Attorney General disclosed the inapplicability of the proposed measure's limitation on the fees of lawyers for defendants in the following statement in the summary: "Limitation does not apply to attorney fees for attorneys for the individuals or entities that caused the injury or death."

The Attorney General's approach substantially complies with ORS 250.035(2)(b). As noted, the proposed measure embodies a statutory amendment that would impose a limit solely on the attorney fees of lawyers for the plaintiff in personal injury litigation. That amendment constitutes the "result if the state measure is approved," ORS 250.035(2)(b), because the limitation on attorney fees for plaintiffs' lawyers is the consequence or the thing that enactment would obtain or achieve. That limitation would be the most significant and immediate result of the enactment of the proposed measure and carries the greatest consequence for the general public. As a result, the Attorney General properly chose to describe that limitation in the "yes" vote result statement.

Moreover, the Attorney General correctly decided to disclose in the summary, rather than in the "yes" vote result statement, the inapplicability of the limitation to attorney fees for lawyers for defendants or the discriminatory effect of limiting only the fees of lawyers for plaintiffs. The 25-word limitation in ORS 250.035(2)(b) often can inhibit a clear description of every consequence of the adoption of a proposed measure. For example, in the present proceeding, the additional phrase that Novick advocates, "defendants' attorney fees unlimited," risks both ambiguity and inaccuracy by attempting to convey Novick's point in only four words. The Attorney General recognized Novick's point, *i.e.*, that the proposed measure would affect plaintiffs, defendants, and their lawyers unequally. However, the Attorney General was required to choose how to describe that discriminatory effect without speculation and in terms that enhance the voters'

understanding of the most important consequences of enactment. The Attorney General determined that identifying the proposed measure's bias in favor of defendants and their lawyers, while significant, was not as important to the voters as the identification of the proposed measure's bias against plaintiffs and their lawyers. Although it was not the only choice available, the Attorney General's choice passes muster under the standard of review that ORS 250.085(5) prescribes.

■ Novick next asserts that the Attorney General's "no" vote result statement fails to provide a simple and understandable description of the result of rejection of the proposed measure. Novick points out that Code of Professional Responsibility Disciplinary Rule (DR) 2-106(A) provides that "[a] lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee." Novick argues that, although no current law imposes a specific cap on any attorney fee agreement, DR 2-106 does prohibit an illegal or excessive fee in any case, and the "no" vote result statement must disclose that limitation expressly to describe current law in an accurate, understandable manner.

ORS 250.035(2)(c) requires a ballot title to include "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." We conclude that the Attorney General's "no" vote result statement satisfies that requirement. First, the Attorney General has addressed the substance of current law *on the subject matter of the proposed measure, i.e.,* whether current law imposes monetary limits on plaintiffs' attorney fees in personal injury claims.

Second, the Attorney General has summarized the current law accurately. The Attorney General's phrase, "no set monetary limit," clearly indicates that the statement addresses *set monetary limitations*, as opposed to the more general limitations that DR 2-106 imposes.

Third, the Attorney General has disclosed the point that Novick raises by including the following statement in the summary:

"Current law places no limit on fee agreements between injured individuals, their spouses, or legal representatives

and attorneys who agree to represent them, unless result-
ing fee is excessive or illegal."

The inclusion of that statement in the summary substan-
tially reduces any risk that the "no" vote result statement
might cause a voter or petition signer to conclude, errone-
ously, that current law imposes no limitations of any kind on
plaintiffs' attorney fee agreements.

## CREW PETITION

■      Petitioner Crew argues that the caption,[2] "yes" vote
result statement, and summary are inaccurate. According to
Crew, the caption and "yes" vote result statement errone-
ously state that the proposed measure would limit the maxi-
mum "compensation" of lawyers for plaintiffs in personal
injury cases. He asserts that the term "compensation" is mis-
leading because the proposed measure limits only a lawyer's
"fees" and does not limit a lawyer's "compensation" in the
form of reimbursement of costs and expenses actually
incurred in representing the plaintiff. He also contends that
the summary is inadequate because it fails to explain that
the proposed measure would not limit the recovery by plain-
tiffs' lawyers of actual expenses and costs reasonably
incurred in personal injury litigation.

The Attorney General's draft caption and "yes" vote
result statement had incorporated the phrase "attorney fees
charged" rather than the term "compensation." However, the
Attorney General responded to a comment by intervenor
about the draft ballot title by deleting the phrase "attorney
fees charged" and replacing it with the term "compensation"
in the caption and "yes" vote result statement of the certified
ballot title. Intervenor had asserted that the phrase "attor-
ney fees charged" was inaccurate because, in personal injury
litigation, the plaintiff's lawyer often receives payment for
services not from the client but from the proceeds of a
judgment or settlement that a defendant pays. The Attorney
General determined that "compensation" was the more accu-
rate term because it focused on the lawyer's pay for services,

---

[2] ORS 250.035(2)(a) requires a ballot title to include "[a] caption of not more
than 15 words that reasonably identifies the subject matter of the state measure."

rather than on the manner of charging or paying for those services.

The Attorney General asserts that "compensation" is the appropriate term in the context of the caption and "yes" vote result statement. According to the Attorney General, the proposed measure would limit payments to lawyers for legal services and has no effect on the ability of lawyers to recover costs and expenses. The Attorney General argues that, in this context, "[c]osts and expenses are not compensation." Finally, the Attorney General contends that the summary properly describes the proposed measure as a limitation on "the attorney fee, the compensation to which the attorney is entitled. Reference to costs and expenses is superfluous."

We agree with the Attorney General. The limitation in the proposed measure affects only a plaintiff's lawyers' payment for legal services rendered; it has no effect on a lawyer's entitlement to payment of out-of-pocket costs and expenses. Although lawyers commonly refer to a payment for services rendered as an "attorney fee," it is less than clear that the general public equally shares that understanding of the term or readily distinguishes it from a reimbursement of costs and expenses.

The term "compensation," in this context, means "payment for * * * service rendered." *Webster's* at 463. The Attorney General contends, and we agree, that the ordinary meaning of the term "compensation" accurately describes the subject matter of the proposed measure. The phrase that Crew prefers, "attorney fees," also refers to the lawyers' compensation, but we cannot say that, in this context, the phrase "attorney fees" is more accurate or less confusing than the term "compensation." Given the difficulty of eliminating all ambiguity in this context, we conclude that the Attorney General's choice to use "compensation" instead of "attorney fees" in the caption and "yes" vote result statement was a reasonable one. Those portions of the Attorney General's ballot title substantially comply with ORS 250.035(2)(a) and (b).

■ The Attorney General's draft summary also stated that "[t]he limitation does not include actual expenses and costs reasonably incurred by the attorney(s)." However, again responding to a comment by intervenor, the Attorney

General struck that sentence from the certified summary. According to the Attorney General, that choice was correct, because the proposed measure does not purport to limit or regulate in any manner the recovery of a lawyer's costs or expenses of litigation.

Again, we agree. The proposed measure mentions litigation costs ("$100,000, exclusive of actual expenses and costs reasonably incurred * * *") only for the purpose of making clear that the proposed measure's limitation has no relationship to, and no effect on, the recovery of the expenses and costs of litigation. The Attorney General's summary does not include any wording that refers ambiguously to the recovery of costs or expenses. As a result, the additional wording that petitioner Crew seeks is not needed to correct any confusing or misleading wording in the summary.

The Attorney General's summary describes the scope of the proposed measure in part by setting out several aspects of litigation to which it does not apply. For example, the summary provides that the proposed measure does not apply to "certified class actions[ ]" and "attorney fees for attorneys for the individuals or entities that caused the injury or death." Crew proposes to add an additional 14-word sentence to the summary to state his point about costs and expenses. That would require the elimination or significant modification of one or more messages in the Attorney General's summary, thus increasing the risk of ambiguity in the balance of the summary. Ultimately, we are unpersuaded that the Attorney General's summary requires modification to describe an aspect of the litigation process to which the proposed measure would have no application.

As a consequence of the foregoing, we certify the Attorney General's ballot title. ORS 250.085(8).

Ballot title certified.

**RIGGS, J.,** concurring in part and dissenting in part.

I concur with the majority's rejection of the arguments for modification submitted by petitioner Crew. As to the majority's rejection of petitioner Novick's arguments, I respectfully dissent. Contrary to the view expressed in the majority opinion with respect to the Novick petition,

the result statements do not comply substantially with the requirements of ORS 250.035(2)(b) and (c). Both the Attorney General and the majority tiptoe by and otherwise ignore the elephant in the living room. Nor do I believe that their reasoning comports with this court's holding in *Novick v. Myers*, 330 Or 351, 7 P3d 518 (2000). I cannot ignore the obvious and would, therefore, refer the ballot title to the Attorney General for modification.

The clear goal of this proposed measure is to establish an unequal, two-tiered system in which defendants may spend unlimited amounts for attorneys in personal injury and wrongful death cases, but plaintiffs may not. In my view, that two-tiered system is the overriding result and most significant outcome if this proposed measure was enacted.

Because the proposed measure is silent regarding any effect on defendants' attorney fees, the majority seems to believe that the result statements may simply mimic that silence. Yet a result statement must reasonably inform and alert voters about the most significant impacts of a proposed law, not disguise them. *Novick*, 330 Or at 357; ORS 250.035(2)(b). The majority defines a "result" as that which is "brought about by calculation." If so, then a result statement should disclose that which is "brought about." Because this ballot title proposes an inequitable system that favors one side in civil litigation, the result statements must disclose that inequity.

Contrary to the majority's assertion, this court's decision in *Novick* is consistent with this view. The ballot title in *Novick* proposed a similarly discriminatory measure. The result statement failed to reveal that proposed measure's discriminatory impact because it failed to identify with specificity against whom the discriminatory application would operate. *Novick*, 330 Or at 355. This court's holding in *Novick* requires that voters be informed clearly when a proposed measure discriminates according to status. *Id.* at 357. Just as ambiguous terms might fail to inform Oregon's voters in a meaningful way, so does the nondisclosure of critical terms that effectively hide the ball.

The result statement for a "no" vote equally must be clear and, here, there is a requirement of parallelism; ORS 250.035(3) requires "no" vote result statements to contain

wording that parallels the "yes" vote result statement as much as possible. Because I would require revision of the "yes" vote result statement, the "no" vote statement would require similar revision to maintain the required parallelism.

Furthermore, the most accurate and least misleading statement regarding the current state of the law is not that there are "no set monetary limitations on plaintiff's attorney fees" but that there are none imposed on either plaintiffs' or defendants' attorney fees. Wording to that effect should appear in the "no" vote result statement.[3]

In sum, I would refer the ballot title to the Attorney General for modification of the "yes" and "no" vote result statements.

---

[3] And, ideally, in the summary.

## Appendix

## AN ACT

Relating to attorney fees; creating new provisions; amending ORS 20.340.

**Be It Enacted by the People of the State of Oregon:**

<u>SECTION 1.</u>   ORS 20.340 is amended to read:

(1)  **Except as provided in Section 3 of this 2006 Act,** [*I*]in any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, if an attorney for a plaintiff in respect to any civil action enters into an agreement with the plaintiff whereby the attorney receives as a fee a percentage of the amount of any settlement or judgment awarded to the plaintiff:

(a)  The contingent fee agreement shall be written in plain and simple language reasonably believed to be understandable by the plaintiff.

(b)  The attorney shall explain the terms and conditions of the agreement in compliance with a model explanation in plain and simple language prepared by the Oregon State Bar a reasonable time before the agreement is signed.

(c)  The contingent fee agreements must contain a provision allowing the plaintiff to rescind the agreement within 24 hours after signing upon written notice to the attorney.

(2)  Any contingent fee agreement entered into on or after September 26, 1987, that does not comply with the requirements of subsection (1) of this section is voidable.

<u>SECTION 2.</u>   **Section 3 of this 2006 Act is added to and made a part of ORS 20.075 to 20.340.**

<u>SECTION 3.</u>   **(1)  Except as provided in subsection (2) of this Section, in any civil action arising out of bodily injury or death, including claims for emotional**

injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the attorney fees charged to the plaintiff, the plaintiff's legal representative or the plaintiff's estate by one or more attorney(s), whether based on a contingency fee or an hourly rate, shall not exceed a total of $100,000, exclusive of actual expenses and costs reasonably incurred, whether received by judgment, settlement, or otherwise, and regardless of the number of plaintiff's attorneys or defendants. Notwithstanding the above, in cases covered by this subsection, attorney(s) and client may negotiate attorney fees, whether based on a contingency fee or an hourly rate, in an amount not to exceed $100,000.

(2)    The attorney fees limit set forth in subsection (1) of this Section shall not apply to attorney fees charged to a member of a class in any class action maintained by order of the court in accordance with ORCP 32.

SECTION 4.    The amendment to ORS 20.340 by Section 1 of this 2006 Act and the new provisions set forth in Section 3 of this 2006 Act apply to all attorney fee agreements that are entered into on or after January 1, 2007.