FILED: August 2, 2007


IN THE SUPREME COURT OF THE STATE OF OREGON


JERRY CARUTHERS &
LARRY WOLF,


v.


HARDY MYERS,
Attorney
General, 
State of Oregon,

Respondent.


(SC S54528)


En Banc


On petition to review ballot title.


Submitted on the record March 30, 2007.


Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition for
petitioners.


Denise G. Fjordbeck, Assistant Attorney General, Salem, filed the answering
memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney
General, and Mary H. Williams, Solicitor General.


Gregory W. Byrne, Portland, filed a brief for amicus curiae Bill Sizemore.


GILLETTE, J.


Ballot title referred to Attorney General for modification.


GILLETTE, J.

This ballot title review proceeding brought under ORS 250.085(2) concerns
the Attorney General's certified ballot title for a proposed initiative measure, denominated
by the Secretary of State as Initiative Petition 61 (2008). The proposed measure is set
forth in the margin. (1) If adopted, the measure would amend present law on ad
valorem taxation of primary residences by creating an exemption to the rules ordinarily
governing assessment of such properties. Under the exemption, such property would be
exempt (1) from the first $100,000 of assessment if one of the owners was age 65 or older
and used the property as his or her primary residence; (2) from the first $150,000 of
assessment if one of the owners was 70 years of age or older and used the property as his
or her primary residence; (3) from the first $200,000 of assessment if one of the owners
was age 75 or older and used the property as his or her primary residence; and (4) from
the full assessment value of the property if one of the owners was 80 years of age or older
and used the property as his or her primary residence. The proposed measure would not
apply to "any voter approved add-on taxes, such as serial levies, local option taxes, and
taxes imposed to pay for voter-approved bonded indebtedness or the interest thereon." 
The proposed measure directs the legislative assembly to adopt legislation to avoid abuses
of the ownership and residence provisions of the proposed measure. (2)

Petitioners are electors who timely submitted written comments to the
Secretary of State concerning the content of the Attorney General's draft ballot title and
who therefore are entitled to seek review of the resulting certified ballot title in this court. 
See ORS 250.085(2) (stating that requirement). We review the Attorney General's
certified ballot title to determine whether it substantially complies with the requirements
of ORS 250.035(2)(a) to (d). ORS 250.085(5). For the reasons that follow, we conclude
that the ballot title challenged here fails that test.

The Attorney General certified the following ballot title for Initiative
Petition 61 (2008):

"ESTABLISHES PROPERTY TAX EXEMPTION FOR SENIOR CITIZEN'S PRIMARY RESIDENCE; INAPPLICABLE TO SPECIFIED VOTER APPROVED TAXES


"RESULT OF 'YES' VOTE: 'Yes' vote establishes a property tax
exemption for primary residence of senior citizen; amount of exemption
increases with age; specified voter approved taxes not included.


"RESULT OF 'NO' VOTE: 'No' vote retains current laws regarding
ad valorem residential property taxation, including potential low income
deferral but no exemption for primary residence of senior citizen.

"SUMMARY: Establishes a property tax exemption for the primary
residence owned and occupied by senior citizen, beginning in the tax years
starting January 1, 2009. For a senior citizen aged 65 to 69, the exemption
applies to the first $100,000 of assessed value of the property; for ages 70 to
74, $150,000; for ages 75 to 79, $200,000. The exemption would be 100
percent for property owners aged 80 and older. The exemption would not
apply to any voter approved add-on taxes, such as serial levies, local
options, and bond measures. The exemption would increase by 3 percent
per annum from 2010. The measure directs the legislature to adopt
legislation to prevent fraud in the implementation of the measure. Other
provisions."


(Boldface in original.)

Petitioners challenge the caption, the "yes" result statement, and the
summary in the Attorney General's certified ballot title. All their challenges have a
common theme, however, and we therefore take this opportunity to summarize it.

Petitioners assert that the proposed measure, although it speaks of virtually
nothing but exemptions from ad valorem tax assessments for the homes of "senior
citizens," actually would have the effect of reducing local property tax revenues to a level
that would cripple local schools and governments. That change to current law, petitioners
assert, must be identified in all three of the specified parts of the Attorney General's
certified ballot title.

We note at the outset that petitioners' underlying theory sweeps too widely. 
We do not deny that there might be circumstances in which it fairly could be said that a
proposed measure, although written in terms of subject X, really was about subject Y. 
This is not such a case, however. The words of the proposed measure establish
inescapably that the measure is about (and, if passed, would affect) ad valorem property
taxes paid by senior citizens on their primary residences.

Petitioners rely on Kain/Waller v. Myers, 337 Or 36, 93 P3d 62 (2004). In
that case, two proposed measures would have "capped" at a specific dollar level (3) the
amount that could be collected in ad valorem property taxes on primary dwellings and on
the parcels on which those dwellings were situated, without regard to the value of the
property, the age of the owner, or any other criterion. Petitioners then argued, based on
data that the Attorney General did not challenge, that "[t]he limitation operates * * * as a
ceiling on the total amount of property taxes payable, not as a limitation either on the rate
of property taxation or on the growth on the assessed valuation of property." Id. at 41. 
Faced with what was, in this court's view, not merely a far-ranging reduction in ad
valorem property tax revenues but, in fact, a change in the economic basis on which such
taxes in future would be imposed, this court concluded that the Attorney General could
not permissibly ignore that reduction in either the caption or the "yes" result statements in
the Attorney General's certified ballot titles. Id. at 43-44.

We do not find this case to be Kain/Waller revisited, however. Here, the
exemption applies to a certain group of property taxpayers -- far fewer than half, even by
petitioners' arguments. In addition, it imposes no overall limit on the amount of property
taxes that can be collected from the beneficiaries of the proposed measure, let alone from
all residential property taxpayers, as did the proposed measure under consideration in
Kain/Waller. The various property owners who otherwise would benefit from the
measure remain fully liable for a number of add-on and voter-approved taxes. (That was
not true in Kain/Waller.) We do not say that, as a result of the foregoing differences, the
information that petitioners wish to have appear in the Attorney General's certified ballot
title has no place in that document; we say only that the information may satisfy legal
requirements if it appears somewhere besides the caption.

The caption of the Attorney General's certified ballot title must "reasonably
identif[y]" in 15 words or less "the subject matter of the state measure." ORS
250.035(2)(a). Petitioners argue that the caption in the present case, like the captions in
Kain/Waller, must be modified because, petitioners assert, the proposed measure
"changes" a fundamental premise of the present ad valorem property tax system -- "that
the tax liability is based upon the value of property."

We reject that argument as proving too much. All exemptions of any kind
to ad valorem taxation must have some impact on revenue, but we do not think -- and we
did not hold in Kain/Waller -- that an attempt to enact any exemption by means of the
initiative or referendum requires the Attorney General to mention the potential revenue
change in the caption in the initiative's ballot title. In the present case, we acknowledge
that the issue is a reasonably close one. Had the Attorney General chosen to include the
information for which petitioners now contend in his ballot title caption, it may even be
that such a choice would have withstood a legal challenge. But there has to be some play
in the joints of the ballot title writing process, if this court is to maintain its status as a
law-enforcing court, rather than an editorial board. Indeed, that flexibility inheres in the
"substantial compliance" standard that the legislature has established in evaluating
certified ballot titles pursuant to ORS 250.085(5). We find no error in this respect.

Petitioners argue in the alternative that "[t]he other major change made by
the proposal is to give senior citizens who own property a tax break, regardless of
whether they are able to pay their taxes." That may be a consequence of the enactment of
the measure, but we cannot say that it is in any sense the "subject matter" of the measure,
which the caption must identify. Here, too, we find no error. We turn to petitioners'
arguments concerning the "yes" vote result statement.

ORS 250.035(2)(b) requires that a ballot title contain a "simple and
understandable statement of not more than 25 words that describes the result if the state
measure is approved." The purpose of this section of the ballot title is to "notify petition
signers and voters of the result or results of enactment that would have the greatest
importance to the people of Oregon." Novick/Crew v. Myers
, 337 Or 568, 574, 100 P3d
1064 (2004). Petitioners assert that, when a proposal has a clear revenue impact, that
"result" must be included in the "yes" vote result statement. They rely on