No. 6 March 5, 2015 783

IN THE SUPREME COURT OF THE
STATE OF OREGON

Eugene SCHOENHEIT,
*Petitioner,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

(S062785) (Control)

Ben UNGER,
*Petitioner,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

(S062787)

En Banc

On petitions to review ballot title filed November 25, 2014; considered and under advisement February 10, 2015.

Eugene Schoenheit, Milwaukie, filed the petition and response for himself.

Aruna A. Masih of Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and response for petitioner Unger.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Steven C. Berman of Stoll Stoll Berne Lokting & Shlacher, P.C., Portland, filed the *amicus curiae* brief for Joseph Baessler.

LANDAU, J.

Ballot title referred to the Attorney General for modification.

## LANDAU, J.

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 8 (2016), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). This court reviews a certified ballot title to determine whether it substantially complies with the requirements set out in that statute. *See* ORS 250.085(5). For the following reasons, we refer the ballot title to the Attorney General for modification.

IP 8, a copy of which is attached as an Appendix to this opinion, would alter the authority of metropolitan service districts in Oregon. In brief, it would eliminate the authority of a metropolitan service district to engage in various planning functions related to land use, urban growth, air and water quality, and transportation. It begins by declaring that a metropolitan service district may not: adopt land use planning goals and objectives; enact land use regulations; adopt a regional framework plan; designate urban or rural reserves or enter into an intergovernmental agreement with a county for the purposes of making such a designation; exercise certain "coordinative functions;" or serve as a "metropolitan planning organization," an entity required by federal law for the purposes of long-range transportation planning and air quality control. *See* 23 USC § 134(d), (i) (2012). There follow a number of sections that would have the effect of amending or repealing various provisions of ORS chapters 195, 197, and 268 that currently authorize metropolitan service districts to engage in those actions. It also would provide that metropolitan service districts are permitted to "encourage, but not require" cities to coordinate air quality, water quality, and transportation planning.

The Attorney General certified the following ballot title for IP 8:

### "Eliminates authority of metropolitan service district to adopt, enforce land use, air/water quality plans

"**Result of 'Yes' Vote:**  'Yes' vote eliminates metropolitan service district's authority to adopt regional plan for managing urban growth; coordinate land use; establish urban growth boundary, urban/rural reserves.

"**Result of 'No' Vote:** 'No' vote retains metropolitan service district's authority to adopt regional plan for managing urban growth; coordinate land use; establish urban growth boundary, urban/rural reserves.

"**Summary:** A metropolitan service district ('district') makes public services available in metropolitan area and adopts plans to control land use activities having metropolitan significance, including air and water quality, transportation impacts. Currently, only established district is Portland metropolitan area. A district adopts urban growth boundary; creates urban/rural reserves; creates regional plan; may review, change comprehensive plans of cities, counties in district; coordinates land use planning activities within district. District's land use rules are binding on cities, counties within district. Electors of district may change, repeal district's charter. Measure eliminates district's authority to designate urban, rural reserves; adopt, enforce regional land use rules, air and water quality rules; coordinate land use planning within district; receive/distribute federal transportation funds; shifts costs to cities/counties."

Chief petitioner Schoenheit contends that the certified ballot title is deficient in a number of different respects pertaining to the caption, the results statements, and the summary. We reject those contentions without discussion.

Petitioner Unger challenges the ballot title in one respect that warrants at least brief discussion. Petitioner Unger contends that the "yes" and "no" vote results statements are deficient in that they omit any reference to air and water quality planning and thus are underinclusive. The state responds that, although IP 8's elimination of that planning function certainly is a major effect of the measure, the results statements are not deficient, because the reference to authority to adopt "a regional plan managing urban growth" is adequate. We are not persuaded by the state's response.

ORS 250.035(2)(b) provides that a result statement must be a "simple and understandable statement of not more than 25 words that describes the result" if the measure is approved or disapproved. The purpose of the "yes" result statement is to "notify petition signers and voters

of the result or results of enactment that would have the greatest importance to the people of Oregon." *Novick/Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004). The purpose of the "no" vote result statement is to accurately describe the "state of affairs" that will exist if the measure is rejected. *Nesbitt v. Myers*, 335 Or 424, 433, 71 P3d 530 (2003).

In this case, one of the major effects of the measure would be to eliminate a metropolitan service district's authority to coordinate air and water quality planning. The Attorney General does not dispute that that is a major effect of the measure and in fact includes that effect in the ballot title caption. The reference in the results statements to a "regional plan for managing urban growth" is too broad to apprise potential petition signers and voters of that effect; it necessitates assuming that they will readily understand all that is entailed in a regional plan under current state law. Moreover, it fails to cover the role of a metropolitan service district as the federally mandated metropolitan planning organization charged with carrying out federal air and water quality planning responsibilities. We therefore refer the ballot title to the Attorney General for modification.

Petitioner Unger also contends that the ballot title caption is deficient because it fails to state that the measure would eliminate a metropolitan service district's authority to "coordinate" various planning functions. The Attorney General agrees that referring to coordination of planning functions might improve the caption. Given that we refer the ballot title to the Attorney General for modification, the Attorney General is free to take petitioner Unger's proposal into account in modifying the ballot title.

Ballot title referred to the Attorney General for modification.

# APPENDIX

An Act to return land use authority to the counties and cities in Oregon

Be it enacted, the People of the State of Oregon propose amending State Statutes as follows:

SECTION 1. Section 2 of this 20l4 Act is added to and made a part of ORS 268.300 to 268.393.

SECTION 2. Notwithstanding any other provision of law, a metropolitan service district may not:

    (1)     Adopt land-use planning goals and objectives;

    (2)     Enact land use regulations;

    (3)     Adopt a regional framework plan;

    (4)     Designate urban or rural reserves pursuant to ORS.195.137 to 195.145, or enter into an intergovernmental agreement with a county for purposes of making such a designation;

    (5)     Exercise coordinative functions pursuant to ORS 195.020 to 195.025;

    (6)     Serve as a metropolitan planning organization for purposes of federal law.

SECTION 3. ORS 268.380 is amended as follows:

(1) A district may:

    *[(a) Adopt land-use planning goals and objectives for the district consistent with goals adopted under ORS chapters 195, 196 and 197;]*

    *[(b) Review the comprehensive plans in effect on January I. 1979, or subsequently adopted by the cities and counties within the district and recommend that cities and counties; as the district considers necessary, make changes in any plan to ensure that the plan conforms to the district's metropolitan area goals and-objectives and the statewide goals;]*

    *[(c) Coordinate the land-use planning activities of that portion of the cities and counties within the district; and]*

    *[(d)]* (a) Coordinate its activities *[and the related activities of the cities and counties within the district]* with the land-use planning development activities of the federal government, other local governmental bodies situated within this state or within any other state and any agency of this state or another state.

1

*[(2) When a district is required by a district charter to adopt a regional framework plan, the regional framework plan shall include and be consistent with land use planning goals and objectives adopted by the district.]*

SECTION 4. ORS 268.385 is hereby repealed.

SECTION 5. ORS 268.390 is amended as follows:

( 1) A district may define and apply a planning procedure that identifies and designates areas and activities having significant impact upon the orderly and responsible development of the metropolitan area, including, but not limited to, impact on:

   (a) Air quality;

   (b) Water quality; and

   (c) Transportation.·

(2) A district may *[prepare and adopt functional plans]* encourage, but not require, cities and counties within the district to provide a coordinated response for those areas designated under subsection (1) of this section to control metropolitan area impact on air and water quality, transportation and other aspects of metropolitan area development the district may identify.

*[(3) (a) A district shall adopt an urban growth boundary for the district in compliance with applicable goals adopted under ORS chapters 195, 196 and 197. When a district includes land designated as urban reserve under ORS 195.145 (1)(b) within an urban growth boundary pursuant to ORS 197.298 (1), the district is not required to consider the capability classification system or the cubic foot site class of the land as described in ORS 197.298 (2).]*

*[(b) Notwithstanding the procedural requirements for boundary changes under ORS 268.354, when the district adopts an urban growth boundary, the urban growth boundary becomes the boundary of the district.]*

*[(4) A district may review the comprehensive plans adopted by the cities and counties within the district that affect areas designated by the district under subsection (1) of this section or the urban growth boundary adopted under subsection (3) of this section and recommend or require cities and counties, as it considers necessary, to make changes in any plan to ensure that the plan and any actions taken under the plan substantially comply with the district's functional plans adopted under subsection (2) of this section and its urban growth boundary adopted under subsection (3) of this section.]*

*[(5) Pursuant to a regional framework plan, a district may adopt implementing ordinances that:]*

*[(a) Require local comprehensive plans and implementing regulations to substantially comply with the regional framework plan within two years after compliance acknowledgment.]*

*[(b) Require adjudication and determination by the district of the consistency of local comprehensive plans with the regional framework plan.]*

*[(c) Require each city and county within the jurisdiction of the district and making land use decisions concerning lands within the land use jurisdiction of the district to make those decisions consistent with the regional framework plan. The obligation to apply the regional framework plan to land use decisions shall not begin until one year after the regional framework plan is acknowledged as*

*complying with the statewide land use planning goals adopted under ORS chapters 195, 196 and 197.]*

*[(d) Require changes in local land use standards and procedures if the district determines that changes are necessary to remedy a pattern or practice of decision-making inconsistent with the regional framework plan.]*

*[(6) A process established by the district to enforce the requirements of this sections must provide:]*

*[(a) Notice of noncompliance to the city or county.]*

*[(b) Opportunity for the city or county to be heard.]*

*[(c) Entry of an order by the district explaining its findings, conclusions and enforcement remedies, if any.]*

*[(7) Enforcement remedies ordered under subsection (6) of this section may include, but are not limited to:]*

*[(a) Direct application of specified requirements of functional plans to land use decisions by the city or county;]*

*[(b) Withholding by the district of discretionary funds from the city or county; and]*

*[(c) Requesting an enforcement action pursuant to ORS 197.319 to 197.335 and withholding moneys pursuant to an enforcement order resulting from the enforcement action.]*

*[(8) An order issued under subsection (6) of this section:]*

*[(a) Must provide for relief from enforcement remedies upon action by the city or*

3

*county that brings the comprehensive plan and implementing regulations into substantial compliance with the requirement.]*

*[(b) Is subject to review under ORS 197.830 to 197.845 as a land use decision.]*

*[(9) The regional framework plan, ordinances that implement the regional framework plan and any determination by the district of consistency with the regional framework plan are subject to review under ORS 197.274.]*

SECTION 6. ORS 195.020 is amended as follows:

(1) Special districts shall exercise their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use, including a city or special district boundary change as defined in ORS 197 .175 (1), in accordance with goals approved pursuant to ORS chapters 195, 196 and 197.

(2) A county assigned coordinative functions under OR 195.025 (l) [, *or the Metropolitan Service District, which is assigned coordinative functions for Multnomah, Washington and Clackamas counties by ORS 195.025 (1),*] shall enter into a cooperative agreement with each special district that provides an urban service within the boundaries of the county[*or the metropolitan district]*. A county [*or the Metropolitan Service District*] may enter into a cooperative agreement with any other special district operating within the boundaries of the county or the metropolitan district.

(3) The appropriate city and county [*and, if within the boundaries of the Metropolitan Service District, the Metropolitan Service District,*] shall enter into a cooperative agreement with each special district that provides an urban service within an urban growth boundary. The appropriate city and county[, *and the* Metropolitan *Service District,*]may enter into a cooperative agreement with any other special district operating within an urban growth boundary.

(4) The agreements described in subsection (2) of this section shall conform to the requirements of paragraphs (a) to (d), (f) and (g) of this subsection. The agreements described in subsection (3) of this section shall:

    (a) Describe how the city or county will involve the special district in comprehensive planning, including plan amendments, periodic review and amendments to land use regulations;

    (b) Describe the responsibilities of the special district in. comprehensive planning, including plan amendments, periodic review and amendments to land use regulations regarding provision of  urban services;

4

(c) Establish the role and responsibilities of each party to the agreement with respect to city or county approval of new development;

(d) Establish the role and responsibilities of the city or county with respect to district interests including, where applicable, water sources, capital facilities and real property, including rights of way and easements;

(e) Specify the units of local government which shall be parties to an urban service agreement under ORS 195.065;

[*(f)If a Metropolitan Service District is a party to the agreement, describe how the Metropolitan Service District will involve the special district in the exercise of the Metropolitan Service District's regional planning responsibilities;]* and

(g) Contain such other provision as the Land Conservation and Development Commission may require by rule.

(5) Agreements required under subsections (2) and (3) of this section are subject to review by the commission. The commission may provide by rule for periodic submission and review of cooperative agreements to insure that they are consistent with acknowledged comprehensive plans.

SECTION 7. ORS 195.025 is amended as follows:

(l) In addition to the responsibilities stated in ORS 197.175, each county, through its governing body, shall be responsible for coordinating all planning activities affecting land uses within the county, including planning activities of the county, cities, special districts and state agencies, to assure an integrated comprehensive plan for the entire area of the county. *[In addition to being subject to the provisions of ORS chapters 195, 196 and 197 with respect to city or special district boundary changes, as defined by ORS 197.175 (1), the governing body of the Metropolitan Service District shall be considered the county review, advisory and coordinative body for Multnomah, Clackamas and Washington Counties for the areas within that district.]*

(2) For the purposes of carrying out ORS chapters 195, 196 and 197, counties may voluntarily join together with adjacent counties as authorized in ORS 190.003 to 190.620.

(3) Whenever counties and cities representing 51 percent of the population in their area petition the Land Conservation and Development Commission for an election in their area to form a regional planning agency to exercise the authority of the counties under subsection (1) of this section in the area; the commission shall review the petition. If it finds that the area described in the petition forms a reasonable planning unit, it shall call an election in the area on a date specified in ORS 203.085 to form a regional

planning agency. The election shall be conducted in the manner provided in ORS chapter 255. The county clerk shall be considered the elections officer and the commission shall be considered the district elections authority. The agency shall be considered established if the majority of votes favor the establishment.

(4) If a voluntary association of local governments adopts a resolution ratified by each participating county and a majority of the participating cities therein which authorizes the association to perform the review, advisory and coordination functions assigned to the counties under subsection (1) of this section, the association may perform such duties.

SECTION 8. ORS 195.141 is amended as follows:

(1) A county *[and a metropolitan service district established under ORS chapter 268 may enter into an intergovernmental agreement pursuant to ORS 190.003 to190.130, 195.025·or 197.652 to197.658 to]* may designate rural reserves pursuant to *this* section and urban reserves pursuant to ORS 195.145 (l)(b). (2) Land designated as a rural reserve:

(a) Must be outside an urban growth boundary.

(b) May not be designated as an urban reserve during the urban reserve planning period described     in ORS 195 .145 (4).

(c) May not be included within an urban growth boundary during the period of time described in     paragraph (b) of this subsection.

(3) When designating a rural reserve under this section to provide long-term protection to the agricultural industry, a county *[and a metropolitan service district]* shall base the designation on consideration of factors including, but not limited to, whether land proposed for designation as a rural reserve:

(a) Is situated in an area that is otherwise potentially subject to urbanization during the period described in subsection (2)(b) of this section, as indicated by proximity to the urban growth boundary and to properties with fair market values that significantly exceed agricultural values;

(b) Is capable of sustaining long-term agricultural operations;

(c) Has suitable soils and available water where needed to sustain long-term agricultural operations; and

( d) Is suitable to sustain long-term agricultural operations, taking into account:

6

         (A) The existence of a large block of agricultural or other resource land with a concentration or cluster of farms.

         (B) The adjacent land use pattern, including its location in relation to adjacent nonfarm uses and the existence of buffers between agricultural operations and nonfarm uses;

         (C) The agricultural land use pattern, including parcelization, tenure and ownership patterns; and

         (D) The sufficiency of agricultural infrastructure in the area.

(4) The Land Conservation and Development Commission shall, after consultation with the State Department of Agriculture, adopt by goal or by rule a process and criteria for designating rural reserves pursuant to this section.

SECTION 9. ORS 195.143 is amended as follows:

(l) A county [*and a metropolitan service district*] must consider simultaneously the designation and establishment of:

    (a) Rural reserves pursuant to ORS 195.141; and

    (b) Urban reserves pursuant to ORS 195.145 (l)(b).

[*(2) An agreement between a county and a metropolitan service district to establish rural reserves pursuant to ORS 195.141 and urban reserves pursuant to ORS 195.145(l)(b) must provide for a coordinated and concurrent process for adoption by the county of comprehensive plan provisions and by the district of regional framework plan provisions to implement the agreement. A district may not designate urban reserves pursuant to ORS 195.145 (1)(b) in a county until the county and the district have entered into an agreement pursuant to ORS 195.145 (1)(b) that identifies the land to be designated by the district in the district's regional framework plan as urban reserves. A county may not designate rural reserves pursuant to ORS 195.141 until the county and the district have entered into an agreement pursuant to ORS 195.14 that identifies the land to be designated as rural reserves by the county in the*

*county's comprehensive plan.]*

[*(3)*] (2) A county [*and a metropolitan service district*]may not [*enter into an intergovernmental agreement to*] designate urban reserves in the county pursuant to ORS 195.145(I)(b),unless the county [*and the district also agree to designate*] designates rural

reserves in the county.

(4) Designation and protection of rural reserves pursuant to ORS 195.141 or urban reserves pursuant to ORS 195.145 (l)(b):

(a) Is not a basis for a claim for compensation under ORS 195.305 unless the designation and protection of rural reserves or urban reserves imposes a new restriction on the use of private real property.

(b) Does not impair the rights and immunities provided under ORS 30.930 to 30. 947.

SECTION 10. ORS 195.145 is amended as follows:

(1) To ensure that the supply of land available for urbanization is maintained:

(a) Local governments may cooperatively designate lands outside urban growth boundaries as urban reserves subject to ORS 197.610 to 197.625 and 197.626.

[*(b) Alternatively, a metropolitan service district established under ORS chapter 268 and a county may enter into a written agreement pursuant to ORS 190.003 to 190.130; 195.025 or 197.658 to designate urban reserves. A process and criteria developed pursuant to this paragraph are an alternative to a process or criteria adopted pursuant to paragraph (a ) of this subsection.*]

(2) (a) The Land Conservation and Development Commission may require a local government to designate an urban reserve pursuant to subsection (1)(a) of this section during it periodic review in accordance with the conditions for periodic review under ORS 197.628.

(b) Notwithstanding paragraph (a) of this subsection, the commission may require a local government to designate an urban reserve pursuant to subsection (1)(a) of this section outside of its periodic review if:

(A) The local government is located inside a Primacy Metropolitan Statistical Area or a Metropolitan Statistical Area as designated by the Federal Census Bureau upon November 4, 1993; and

(B) The local government has been required to designate an urban reserve by rule prior to November 4, 1993.

(3) In carrying out subsections (1) and (2) of this section:

(a) Within an urban reserve, neither the commission nor any local government

8

shall prohibit the siting on a legal parcel of a single family dwelling that would otherwise have been allowed under law existing prior to designation as an urban reserve.

(b) The commission shall provide to local governments a list of options, rather than prescribing a single planning technique, to ensure the efficient transition from rural to urban use in urban reserves.

(4) Urban reserves designated by [*a metropolitan service district and a county*] local governments pursuant to subsection [*(1)(b)*] (1)(a) of this section must be planned to accommodate population and employment growth for at least 20 years, and not more than 30 years, after the 20-year period for which the district has demonstrated a buildable land supply in the most recent inventory, determination and analysis performed under ORS 197.296.

(5) [*A district and a county*] Local governments shall base the designation of urban reserves under subsection [*(1)(b)*] (1)(a) of this section upon consideration of factors including, but not limited to, whether land proposed for designation as urban reserves, alone or in conjunction with land inside the urban growth boundary:

(a) Can be developed at urban densities in a way that makes efficient use of existing and future public infrastructure investments;

(b) Includes sufficient development capacity to support a healthy urban economy;

(c) Can be served by public schools and other urban-level public facilities and services efficiently and cost effectively by appropriate and financially capable service providers;

(d) Can be designed to be walkable and served by a well-connected system of streets by appropriate service providers;

(e) Can be designed to preserve and enhance natural ecological systems; and

(f) Includes sufficient land suitable for a range of housing types.

(6) A county may take an exception under ORS 197.732 to a statewide land use planning goal to allow the establishment of a transportation facility in an area designated as urban reserve under subsection [*(1)(b)*] (1)( a) of this section.

(7) The commission shall adopt by goal or by rule a process and criteria for designating urban reserves pursuant to subsection [*(1)(b)*] (1)(a) of this section.

SECTION 11. ORS 197.296 is amended as follows:

(1)(a) The provisions of this section apply to [*metropolitan service district regional*

*framework plans and*] local government comprehensive plans for lands within the urban growth boundary of a city that is located within a metropolitan service district or a city that is outside of a metropolitan service district and has a population of 25,000 or more.

(b) The Land Conservation and Development Commission may establish a set of factors under which additional cities are subject to the provisions of this section. In establishing the set of factors required under this paragraph, the commission shall consider the size of the city, the rate of population growth of the city or the proximity of the city to another city with a population of 25,000 or more or

to a metropolitan service district.

(2) At periodic review pursuant to ORS 197.628 to 197.651 or at any other legislative review of the comprehensive plan or regional plan that concerns the urban growth boundary and requires the application of a statewide planning goal relating to buildable lands for residential use, a local government shall demonstrate that its comprehensive plan or regional plan provides sufficient buildable lands

within the urban growth boundary established pursuant to statewide planning goals to accommodate estimated housing needs for 20 years. The 20-year period shall commence on the date initially scheduled for completion of the periodic or legislative review.

(3) In performing the duties under subsection (2) of this section, a local government shall:

(a) Inventory the supply of buildable lands within the urban growth boundary and determine the housing capacity of the buildable lands; and

(b) Conduct an analysis of housing need by type and density range, in accordance with ORS 197.303 and statewide planning goals and rules relating to housing, to determine the number of units and amount of land needed for each needed housing type for the next 20 years.

(4)(a) For the purpose of the inventory described in subsection (3)(a) of this section,"buildable lands" includes:

(A) Vacant lands planned or zoned for residential use;

(B) Partially vacant lands planned or zoned for residential use;

(C) Lands that may be used for a mix of residential and employment uses under the existing planning or zoning; and

(D) Lands that may be used for residential infill or redevelopment.

(a) For the purpose of the inventory and determination of housing capacity

10

described in subsection (3)(a) of this section, the local government must demonstrate consideration of:

(A) The extent that residential development is prohibited or restricted by local regulation and ordinance, state law and rule or federal statute and regulation;

(B) A written long term contract or easement for radio, telecommunications or electrical facilities, if the written contract or easement is provided to the local government; and

(C) The presence of a single family dwelling or other structure on a lot or parcel.

(c) Except for land that may be used for residential infill or redevelopment, a local government shall create a map or document that may be used to verify and identify specific lots or parcels that have been determined to be buildable lands.

(5)(a) Except as provided in paragraphs (b) and (c) of this subsection, the determination of housing capacity and need pursuant to subsection (3) of this section must be based on data relating to land within the urban growth boundary that has been collected since the last periodic review or five years, whichever is greater. The data shall include:

(A) The number, density and average mix of housing types of urban residential development that have actually occurred;

(B) Trends in density and average mix of housing types of urban residential development;

(C) Demographic and population trends;

(D) Economic trends and cycles; and

(E) The number, density and average mix of housing types that have occurred on the buildable lands described in subsection (4)(a) of this section.

(b) A local government shall make the determination described in paragraph (a) of this subsection using a shorter time period that the time described in paragraph (a) of this subsection if the local government finds that the shorter time period will provide more accurate and reliable data related to housing capacity and need. The shorter time period may not be less than three years.

(c) A local government shall use data from a wider geographic area or use a time period for economic cycles and trends longer than the time period described in paragraph (a) of this subsection if the analysis of a wider geographic area or the use of a longer time period will provide more accurate, complete and reliable data relating to trends affecting

11

housing need than an analysis performed pursuant to paragraph (a) of this subsection. The local government must clearly describe the geographic area, time frame and source of data used in a determination performed under this paragraph.

(6) If the housing need determined pursuant to subsection (3)(b) of this section is greater than the housing capacity determined pursuant to subsection (3)(a) of this section, the local government shall take one or more of the following actions to accommodate the additional housing need:

(a) Amend its urban growth boundary to include sufficient buildable lands to accommodate housing needs for the next 20 years. As part of this process, the local government shall consider the effects of measures taken pursuant to paragraph (b) of this subsection. The amendment shall include sufficient land reasonably necessary to accommodate the siting of new public school facilities.

The need and inclusion of lands for new public school facilities shall be a coordinated process between the affected public school districts and the local government that has the authority to approve the urban growth boundary;

(b) Amend its comprehensive plan, regional plan or land use regulations to include new measures that demonstrably increase the likelihood that residential development will occur at densities sufficient to accommodate housing needs for the next 20 years without expansion of the urban grown boundary. A local government or metropolitan service district that takes this action shall monitor and record the level of development activity and development density by housing type following the date of the adoption of the new measures; or

(c) Adopt a combination of the actions described in paragraphs (a) and (b) of this subsection.

(7) Using the analysis conducted under subsection (3)(b) of this section, the local government shall determine the overall average density and overall mix of housing types at which residential development of needed housing types must occur in order to meet housing needs over the next 20 years. If that density is greater than the actual density of the development determined under subsection (5)(a)(A) of this section, of if that mix is different from the actual mix of housing types determined under subsection (5)(a)(A) of this section, the local government, as part of its periodic review, shall adopt measures that demonstrably increase the likelihood that residential development will occur at the housing types and density and at the mix of housing types required to meet housing needs over the next 20 years.

(8)(a) A local government outside a metropolitan service district that takes any actions under subsection. (6) or (7) of this section shall demonstrate that the comprehensive plan and land use regulations comply with goals and rules adopted by the commission and

implement ORS 197.295 to 197.314.

(b) The local government shall determine the density and mix of housing types anticipated as a result of actions taken under subsections (6) and (7) of this section and monitor and record the actual density and mix of housing types achieved. The local government shall compare actual and anticipated density and mix. The local government shall submit its comparison to the commission at the next periodic review or at the next legislative review of its urban growth boundary, whichever comes first.

(9) In establishing that actions and measures adopted under subsections (6) or (7) of this section demonstrably increase the likelihood of higher density residential development, the local government shall at a minimum ensure that land zoned for needed housing is in locations appropriate for the housing types indentified under subsection (3) of this section and is zoned at density ranges that are likely to be achieved by the housing market using the analysis in subsection (3) of the section. Actions or measures, or both, may include but are not limited to:

(a) Increases in the permitted density on existing residential land;

(b) Financial incentives for higher density housing;

(c) Provisions permitting additional density beyond that generally allowed in the zoning district in exchange for amenities and features provided by the developer;

(d) Removal or easing of approval standards or procedures;

(e) Minimum density ranges;

(f) Redevelopment and infill strategies;

(g) Authorization of housing types not previously allowed by the plan or regulations;

(h) Adoption of an average residential density standard; and

(i) Rezoning or redesignation of nonresidential land.

SECTION 12.  ORS 197.299 is amended as follows:

(1) A city within a metropolitan service district organized under ORS chapter 268 shall complete the inventory, determination and analysis required under ORS 197.296 (3) not later than five years after completion of the previous inventory, determination and analysis.

(2)(a) The [*metropolitan service district*] shall take such action as necessary under OS 197.296 (6)(a) to accommodate one-half of a 20-year buildable land supply determined

under ORS 197.296 (3) within one year of completing the analysis.

(b) The [*metropolitan service district*] shall take all final action under ORS 197.296 (6)(a) necessary to accommodate a 20-year buildable land supply determined under ORS 197.296 (3) within two years of completing the analysis.

(c) The [*metropolitan service district*] city shall take action under ORS 197.296 (6)(b), within one year after the analysis required ORS 197.296 (3)(b) is completed, to provide sufficient buildable land within the urban growth boundary to accommodate the estimated  housing needs for 20 years from the time the action are completed.  The [*metropolitan service district*] city shall consider and adopt new measures that the governing body deems appropriate under ORS 197.296 (6)(b).

(3) The Land Conservation and Development Commission may grant an extension to the time limits of subsection (2) of this section if the Direction of the Department of Land Conservation and Development determines that the [*metropolitan service district*] city has provided good cause for failing to meet the time limits.

(4)(a) The [*metropolitan service district*] city shall establish a process to expand the urban growth boundary to accommodate a need for land for a public school that cannot reasonably be accommodated within the existing urban growth boundary.  The [*metropolitan service district*] city shall design the process to:

(A) Accommodate a need that must be accommodated between periodic analyses of urban growth boundary capacity required by subsection (1) of this section; and

(B) Provide for a final decision on a proposal to expand the urban growth boundary within four month after submission of a complete application by a large school district as defined in ORS 195.110.

(b) At the request of a large school district, the [*metropolitan service district*] city shall assist the large school district to identify school sites required by the school facility planning process described in ORS 195.110.  A need for a public school is a specific type of identified land need under ORS 197.298(3).

SECTION 13. ORS 197.301 is amended as follows:

(1) A city within a metropolitan service district organized under ORS chapter 268 shall compile and report to the Department of Land Conservation and Development on performance measures a described in this section at least once every two years.  The information shall be reported in a manner prescribed by the department.

(2) Performance measures subject to subsection (1) of this section shall be adopted by a [*metropolitan service district*] city and shall include but are not limited to measures that

14

analyze the following:

(a) The rate of conversion of vacant land to improved land;

(b) The density and price ranges of residential development, including both single family and multifamily residential units;

(c) The level of job creation within individual cities and the urban areas of a county inside the metropolitan service district;

(d) The number of residential units added to small sites assumed to be developed in the metropolitan service district's inventory of available lands but which can be further developed, and the conversion of existing spaces into more compact units with or without the demolition of existing buildings;

(e) The amount of environmentally sensitive land that is protected and the amount of environmentally sensitive land that is developed;

(f) The sales price of vacant land;

(g) Residential vacancy rates;

(h) Public access to open spaces; and

(i) Transpiration measures including mobility, accessibility and air quality indicators.

SECTION 14.  ORS 197.30 is amended as follows:

 (1) After gathering and compiling information on the performance measures as described in ORS 197.301 but prior to submitting the information to the Department of Land Conversation and Development, a city within a metropolitan service district shall determine if actions taken under ORS 197.296(6) have established the buildable land supply and housing densities necessary to accommodate estimated housing needs determined under ORS 197.296(3). If the [*metropolitan service district*] city determines that the actions undertaken will not accommodate estimated needs, the [district] city shall develop a corrective action plan, including a schedule for implementation.  The [district] city shall submit the plan to the department along with the report on performance measures required under ORS 197.301.  Correction action under this section may include amendment of the urban growth boundary, comprehensive plan, [*regional framework plan, functional* plan] or land use regulations as described I OS 197.296.

(2) Within two years of submitting a corrective action plan to the department, the [*metropolitan service district*] city shall demonstrate by reference to the performance measures described in ORS 197.301 that implementation of the plan has resulted n the

buildable land supply and housing density within the urban growth boundary necessary to accommodate the estimated housing needs for each housing type as determined under ORS 197.296(3).

(3) The failure of the [*metropolitan service district*] city to demonstrate the buildable land supply and housing density necessary to accommodate housing needs as required under the section and ORS 1997.296 may be the basis for initiation f enforcement action pursuant to ORS 197.319 to 197.335.

SECTION 15 . If any provision of this act is barred from operation by superior law, the other provisions shall remain unaffected.