NELSON, J.
**100 In this ballot title review proceeding, we consider three separate petitions that challenge the Attorney General's certified ballot title for Initiative Petition 5 (2020) (IP 5). For all three petitions, we review the ballot title under the same standard: substantial compliance with ORS 250.035(2). See ORS 250.085(5) (setting out that standard of review). Having considered the various and sometimes conflicting arguments raised in the petitions, we conclude that the ballot title does not substantially comply with ORS 250.035(2). Accordingly, we refer the ballot title to the Attorney General for modification.
I. BACKGROUND
In a nutshell, IP 5 would repeal and replace a provision in the Oregon Constitution, Article IV, section 6, that addresses reapportionment of the state's legislative districts, after each decennial census, to take into account changes in the distribution of the state's population.
In its present form, Article IV, section 6, assigns the task of reapportionment to the legislature, § 6(1), but provides that, if the legislature fails to complete that task by a specified date after the census, the Secretary of State will "make a reapportionment" in the legislature's stead, § (6)(3)(a). It also provides for judicial review of the resulting reapportionment, upon the petition of "any elector," for compliance with the requirements of Article IV, section 6, and "all laws applicable thereto." Or. Const., Art. IV, § 6 (2)(a)-(c); id . § 6 (3)(b), (c). The "laws applicable thereto" include ORS 188.010, which directs the legislature (or the Secretary of State) to apportion districts using certain specified criteria, including a requirement that districts be drawn in a way that does not "divide communities of common interest," ORS 188.010(1)(d), and ORS 188.016, which requires the legislature to hold at least 10 public hearings at locations throughout the state prior to proposing a reapportionment plan, and at least five more public hearings before finally adopting the plan that is proposed.
*197 IP 5 would repeal that current version of Article IV, section 6, and replace it with a new Article IV, section 6, **101 that establishes a "Citizen Commission on Legislative Redistricting" to which the task of reapportionment would fall. The commission created by IP 5 would be composed of 11 members, each of whom would be appointed by all of the county commissioners serving within one of 11 designated geographic areas within the state. Each of the designated geographic areas would be composed of a group of contiguous counties, or, in the case of Washington and Multnomah counties, a single county. The state's population would not be evenly distributed among the 11 areas. As a result, the commission's membership would not equally represent the population of the state but, instead, would give significantly greater representation to rural areas of the state.
After the issuance of the decennial census, the commission thus constituted would be required to (1) adopt a preliminary redistricting plan by an affirmative vote of the majority of its members; (2) hold at least one public hearing in each congressional district regarding the preliminary plan; and (3) adopt a final plan, again by a majority vote, within a designated time frame.
The proposed version of Article IV, section 6, specifies criteria for apportionment by the commission. Most notably, it requires the new commission to apportion districts to be "as compact in area as possible," with the "aggregate linear distance of all district boundaries" being "as short as possible." In addition, the districts must be contiguous, of equal population "within a range of two percent plus or minus," and drawn using "existing geographical and political boundaries to the extent practicable." While some of those criteria for apportionment mirror the statutory criteria for apportionment set out in ORS 188.010 -which the legislature is required to follow when carrying out the redistricting demanded by the current version of Article IV, section 6-some are different. Most notably, IP 5 would (1) establish the above-mentioned "compactness" requirement, which does not exist in the present reapportionment scheme; (2) expressly permit a small amount of inequality between the populations of districts ("equal within a range of two percent") that is not expressly permitted under current law; and (3) omit the present statutory requirement **102 that each district "not divide communities of common interest." ORS 188.010(1)(d).[1]
Finally, the proposed version of Article IV, section 6, provides for judicial review of a final redistricting plan adopted by the commission, but only for constitutional errors and only upon a petition filed by 15 electors. It also provides that, if the commission fails to timely adopt a final redistricting plan, this court will prepare a final redistricting plan within a specified time period.
The Attorney General certified the following ballot title for IP 5:
"Amends Constitution: Transfers legislative redistricting to commission; commission over-represents rural areas; changes redistricting requirements; limits judicial review
"Result of 'Yes' Vote: 'Yes' vote transfers legislative redistricting to commission; commission over-represents rural areas. Changes redistricting requirements; limits "aggregate linear distance" of borders. Fewer hearings. Limits judicial review.
"Result of 'No' Vote: 'No' vote retains redistricting by legislature. Statutory, constitutional criteria. Minimum ten public hearings. Upon default, Secretary of State adopts plan. Elector can seek court review.
"Summary: Amends Constitution. Currently, legislature reapportions legislative districts after census, following at least 10 public hearings. Criteria set by statute and Constitution. If legislature defaults, Secretary of State completes redistricting. Any *198 elector may petition Oregon Supreme Court to review compliance with law; if deficient, court may create plan. Measure replaces current process with 11-member commission. County Commissioners appoint members (excluding recent elected officials, spouses, and some political party officials). Rural areas **103 receive disproportionately high representation. Changes constitutional, statutory requirements; district boundaries must have shortest possible "aggregate linear distance." Five public hearings required. Plan adopted by majority commission vote. Legislature funds commission, otherwise uninvolved. 15 electors required to petition Supreme Court. Court review limited to constitutional defects. Upon default, Supreme Court completes redistricting. Other provisions."
II. ANALYSIS
Three petitions for review of the certified ballot title for IP 5 were filed in this court by electors who timely had submitted comments concerning the Attorney General's draft ballot title (and who therefore had standing to seek such review).[2] ORS 250.085(2). Two of the petitions challenge all three sections of the certified ballot title-that is, the caption, the result statements, and the summary. The third petition challenges only the summary. We begin with the challenges to the caption.
A. Caption
We review the caption for compliance with the statutory requirement, set out at ORS 250.035(2)(a), that a ballot title's caption shall consist of "not more than 15 words that reasonably identify the subject matter of the measure," to be preceded by the words "Amends Constitution" if the measure would amend the Oregon Constitution. For purposes of ORS 250.035(2)(a), a measure's "subject matter" is its "actual major effect"-or, if there is more than one, all such major effects that can fit within the statutory word limit. Markley/Lutz v. Rosenblum , 362 Or. 531, 534, 413 P.3d 966 (2018). To identify a measure's "actual major effect" (or effects), we consider "the changes that the proposed measure would enact in the context of existing law." Id. at 535, 413 P.3d 966.
**104 After thus ascertaining the measure's actual major effects, we examine the caption to determine whether it reasonably identifies those effects. Rasmussen v. Kroger , 350 Or. 281, 285, 253 P.3d 1031 (2011).
We begin with the objections to the Attorney General's caption raised by petitioner Uherbelau. Only two of Uherbelau's three objections warrant extended discussion.[3] Uherbelau first argues that the caption fails to comply with the requirements of ORS 230.035(2)(a) because it fails to mention the most significant "actual major effect" of IP 5, which is to repeal the existing constitutional provision that places redistricting in the hands of the legislature. She explains that it is important to inform the voters that the current legislatively controlled redistricting process, which is enshrined in the Oregon Constitution, will be repealed in its entirety if IP 5 is adopted. And she observes that the phrase "[t]ransfers legislative redistricting to commission" in the certified ballot title's caption fails to provide that information.
Uherbelau also argues that the certified ballot title's caption is flawed because it fails to notify voters that IP 5 creates an entirely new commission to carry out the reapportionment functions that presently are carried out by the legislature. She contends that the fact *199 that the initiative measure creates a new body to assume the duties previously assigned to the legislature should be reflected in the caption.
The Attorney General's responses to those two objections are essentially the same. She argues that neither the fact that IP 5 repeals the existing constitutional provision for reapportionment by the legislature, nor the fact that it creates a new commission to take over the task of reapportionment, are significant changes in the law that need to be highlighted in the caption. She contends that it is **105 more important-and sufficient-to inform voters that the measure provides that redistricting authority will be transferred to a commission and that judicial review of the commission's redistricting efforts will be limited.
We do not agree with the Attorney General's position that a caption that simply states that IP 5 would "transfer legislative redistricting to [a] commission" adequately describes the measure's actual major effects, i.e. , the most significant changes that it would adopt in the context of existing law. Rasmussen , 350 Or. at 285, 253 P.3d 1031. Under existing law, i.e. , Article IV, section 6, of the Oregon Constitution, the legislature is charged with redistricting, and the repeal of that constitutional arrangement clearly is one of the most, if not the most, significant change to existing law that IP 5 would adopt. Although there is no requirement that the term "repeal" be used to describe the change, the caption must somehow convey that IP 5 would eliminate the existing constitutional provision for reapportionment by the legislature.
The creation of an entirely new deliberative body to make reapportionment decisions is, likewise, one of the most consequential changes to existing law that IP 5 would adopt. The simple statement that the measure would "transfer legislative redistricting to commission" does not convey (or even imply, as the Attorney General suggests) that the commission at issue would be newly created by and in accordance with the provisions of IP 5 itself. Neither does the statement "commission over-represents rural areas"-which we discuss at greater length below-fill the gap. Without some wording that clearly conveys that IP 5 creates and configures the commission to which redistricting authority would be transferred, the ballot title's caption fails to reasonably describe the measure's "actual major effect," i.e. , its "subject matter."
Having concluded that the caption certified by the Attorney General is deficient in the two ways that petitioner Uherbelau has identified, we turn to the objections raised by petitioners Fletchall, Lee, and Mannix (the Fletchall petitioners). They contend that the caption fails to comply with ORS 250.035(2)(a) in four different respects: (1) it does not adequately describe the nature of the commission;
**106 (2) it incorrectly or irrelevantly describes the commission as "over-represent[ing] rural areas"; (3) it includes a phrase-"limits judicial review"-that is misleading; and (4) it fails to mention the overriding standard for redistricting set out in IP 5-that districts should be "maximally compact."
With respect to the first point, the Fletchall petitioners argue that an actual major effect of IP 5 is the transfer of responsibility for redistricting from the legislature, which is made up of "partisan office holders," to a commission made up of "nonpartisan, non-elected citizens." They contend that describing the commission as a "non-partisan, citizen commission" is necessary to convey that point because it highlights the ways in which members of the contemplated commission would differ from members of the legislature: they could not be persons who held elective office or who had held any elective office within the previous 10 years; they would not be selected for membership in the commission in a partisan process; they would serve only until their work was done; and they would receive only a per diem allowance for the days that they actually work. The Attorney General responds, however, that the inclusion of the descriptors "citizen" and "non-partisan" would not convey anything about the proposed measure's actual major effects. The term "citizen," the Attorney General explains, has so many different meanings and applications that it likely would not be understood in the way that the Fletchall petitioners *200 suggest. And, because virtually all governmental commissions are "nonpartisan" in some sense, the Attorney General asserts, including the descriptor "nonpartisan" in the caption would not impart anything meaningful about the effect of IP 5 to the voters.
We generally agree with the Attorney General's point that the words "citizen" and "nonpartisan" do not add much, if anything, that is informative to the term that it would modify-"commission." We also observe that those words are not neutral in this context. Given the subject matter, the phrase "nonpartisan, citizen committee" invokes familiar and emotionally charged themes relating to political independence and government by "professional politicians" that would have a greater tendency to promote passage of the **107 measure than to convey its actual content to the voters. Such phrases are not properly included in any part of a measure's ballot title, including the caption. See Earls v. Myers , 330 Or. 171, 176, 999 P.2d 1134 (2000) (phrase "freedom to choose" was likely to prejudice voters in favor of measure and was not properly included in ballot title caption); see also Dirks v. Myers , 329 Or. 608, 616, 993 P.2d 808 (2000) (court would not incorporate terms in ballot title that "tend[ed] more to promote or defeat passage of the measure than to describe its substance accurately").
The Fletchall petitioners next challenge the inclusion of the phrase "commission over-represents rural areas" in the caption. They contend that that phrase does not belong in the ballot title because it erroneously suggests that there is something abnormal or undesirable about the composition of the commission. They note that, in fact, it is quite common for members of a state commission to be chosen to reflect geographic diversity (as is the membership of the commission contemplated by IP 5, in their view)-more common, in fact, than having the members apportioned by population.
The Attorney General responds that commissions whose members are chosen to provide geographic diversity either do so in a way that involves an equal distribution of the state's population among commission members (as is the case, for example, with the Oregon Liquor Control Commission, which must have a member from each congressional district in the state, ORS 471.705(1) ) or serve a function to which specific geographical regions are particularly relevant (as in the case, for example, of the Water Resources Commission, which must have one member from "each of the five regional river basin management areas" in the state, ORS 536.022(1) ). The uneven representation of the state's population in the redistricting commission contemplated by IP 5 cannot be explained on either of those grounds, the Attorney General notes. More importantly, the Attorney General adds, regardless of any purpose of providing geographic diversity, the geographic distribution of membership of the new "Citizen Commission on Legislative Redistricting" is "a stark and a major effect of the measure," given that some positions on the commission represent **108 areas that are inhabited by more than 800,000 residents, while others represent areas that are inhabited by fewer than 100,000 residents.
We agree with the Fletchall petitioners that the phrase "commission over-represents rural areas" is problematic, for similar reasons discussed above. The word "over-represents" is not neutral, but rather has a normative component. That word is likely to prejudice voters against the measure because, rather than making the accurate, factual point that rural areas would have greater representation per capita than population centers, it appears to include a judgment that the representation of rural areas would be excessive. The term "over-represents" should not be used in the caption, or any other part of the ballot title, for that reason. On the other hand, we think that it is permissible and even necessary to highlight the fact that IP 5 transfers reapportionment-a process that, by its nature, is concerned with representation-from a body whose membership is strictly apportioned in accordance with population to one that effectively inverts that population-based apportionment, such that rural areas with fewer residents have more representatives (and, thus, more power). Put more simply, we believe that most people would view the way that membership is allocated as perhaps the most politically consequential feature. It is, therefore, an actual *201 major effect of IP 5 that must be included in the ballot title's caption.
The Fletchall petitioners' third challenge to the caption in the Attorney General's certified ballot title concerns the inclusion of the phrase "[l]imits judicial review." The Fletchall petitioners argue that that phrase is erroneous or misleading because this court will have substantially the same jurisdiction to review a redistricting plan adopted by the Citizen's Commission on Legislative Redistricting that it currently has to review a redistricting plan enacted by the legislature. They contend that the only real difference under IP 5 would be that the applicable standards for reapportionment would all appear in the Oregon Constitution, rather than being spread among statutory provisions and the state and federal constitution, as they currently are. But that difference, they argue, does not place substantial limits on the judicial review of reapportionment that current law **109 provides. The Attorney General counters that the phrase "[l]imits judicial review" accurately describes IP 5 because the measure increases to fifteen the number of petitioners needed to challenge a redistricting plan, shortens the time frame for filing a petition, and precludes review on any non-constitutional basis. The Attorney General insists, moreover, that those changes constitute an actual major effect of the measure that must be included in the caption.
We conclude that the phrase "limits judicial review" is impermissibly vague and potentially misleading. The judicial review currently provided by Article I, section 6(b), is not unlimited,[4] so the statement that IP 5 "limits judicial review" does not helpfully convey any change or effect arising from the measure. To the extent that the words were meant to convey that IP 5 places more limits on judicial review of a reapportionment plan than the limits that currently exist, they fail to do so. In the end, the words do not serve the function of identifying an actual major effect, i.e. , the "subject matter," of the measure.
Having said all of that, the issue is not an important one in this context. Any changes to the judicial review process provided in IP 5 are part of, and secondary to, one of the actual major effects that we already have identified-the establishment of a new, commission-based process for redistricting. They are not, in themselves, an actual major effect of the measure that must be included in the ballot title caption.
The Fletchall petitioners contend, finally, that the caption is deficient because it does not refer to the important new criterion for reapportionment that IP 5 imposes: the requirement that each district be "as compact in area as possible." The Attorney General responds that the effect of that new criterion is sufficiently captured by the phrase "changes redistricting requirements." We agree with the Attorney General that there is no need to separately refer to **110 the new compactness criterion in the caption. In fact, doing so without also mentioning the measure's elimination of the present requirement that districts "not divide communities of common interest," ORS 188.010(1)(d), would provide a skewed understanding of the measure's effect on the legal criteria for the formation of legislative districts. The phrase "changes redistricting requirements" avoids that problem-but, again, the issue is of little consequence in this context. The changes from the current redistricting criteria are significant effects of IP 5, but not so significant that they should displace the "actual major effects" of IP 5 that we already have identified.
To recap, we have identified three "actual major effects" of IP 5 that must be included in the caption of the measure's ballot title: (1) the measure repeals the existing constitutional provision directing the legislature to reapportion legislative districts; (2) the measure creates a new commission to carry out reapportionment in the legislature's stead; and (3) the measure configures the commission *202 in a way that gives rural areas relatively more influence over the reapportioning process than population centers. None of those three major effects are included in the certified ballot title's caption, although we believe that it is possible to include all three in the applicable 15-word limit. It follows that the caption fails to substantially comply with the requirements of ORS 250.035(2)(a) and must be referred to the Attorney General for modification.
B. Result Statements
Petitioner Uherbelau and the Fletchall petitioners also challenge the result statements in the Attorney General's certified ballot title. The standards for the result statements are set out at ORS 250.035(2)(b) and (c) : A "yes" vote result statement must set out a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved," while the "no" vote result statement must describe the result, within the same limitations, "if the state measure is rejected." This court has stated that a "yes" vote result statement should include the results of enactment of the measure that are "most significant and immediate, or that carr[y] the greatest consequence, for **111 the general public." Novick/Crew v. Myers , 337 Or. 568, 574, 100 P.3d 1064 (2004). The "no" vote result statement, on the other hand, should accurately describe the "substance of current law on the subject matter of the proposed measure." Markley/Lutz , 362 Or. at 538, 413 P.3d 966.
1. "Yes" Vote Result Statement
In challenging the Attorney General's "yes" vote result statement, both Uherbelau and the Fletchall petitioners rely in part on themes that they raised in challenging the Attorney General's caption. Uherbelau challenges the "yes" result statement's failure to mention the repeal of the longstanding constitutional provision for redistricting by the legislature and the creation of a new commission to which the task of redistricting would fall. The Fletchall petitioners condemn the statement's failure to describe the commission as a "non-partisan, citizen commission" and its inclusion of the statements "[l]imits judicial review" and "commission over-represents rural areas."
Although we evaluate the "yes" vote result statement in a certified ballot title under a different standard than we evaluate the certified ballot title's caption, our answers to those challenges are essentially the same. We agree with Uherbelau that IP 5's repeal of the constitutional provision for redistricting by the legislature and its creation of a new commission to take over the task of redistricting are the results of the measure that "carry the greatest consequence for the general public," and therefore should be included in the "yes" vote result statement. Novick/Crew , 337 Or. at 574, 100 P.3d 1064. We agree with the Fletchall petitioners that the specific phrase "over-represents rural areas" is problematic for the reasons discussed, but conclude that the underlying point-that the commission that IP 5 would create gives greater representation to rural areas of the state than to its population centers-is yet another result of great consequence to the general public that should be included in the "yes" vote result statement. We conclude that the statement "[l]imits judicial review" should be excluded because it does not intelligibly state an effect or "result" of IP 5. And, because describing the commission as a "nonpartisan, citizen commission" would tend to prejudice voters in favor of **112 the measure rather than inform them as to its effect, we reject the Fletchall petitioners' contention that the "yes" vote result statement must describe the commission in those terms.
But petitioners raise other arguments that are more exclusively directed at the wording of the certified "yes" vote result statement (as opposed to wording that is repeated in all parts of the certified ballot title). The Fletchall petitioners contend that the phrase "limits 'aggregate linear distance' of borders," in the "yes" vote result statement, although drawn directly from IP 5, is misleading because it is unintelligible: The average voter would not understand what was being conveyed by the requirement. They contend that the meaning of the "aggregate linear distance" requirement, in conjunction with a requirement that districts *203 "shall be as compact in area as possible," is more effectively conveyed by a phrase such as "requires maximally compact districts." The Attorney General responds that, insofar as the limitation on "aggregate linear distance" of district borders is the specific method stated in the measure for ensuring that districts are "as compact in area as possible," it is not inaccurate or misleading.
We are not persuaded that the addition of a compactness criterion for drawing district boundaries has any place in the "yes" vote result statement at all, particularly when that statement does not also refer to the measure's elimination of the longstanding and politically significant requirement that districts be drawn in a way that does not divide "communities of common interest." ORS 188.010 (1)(d).[5] Assuming (as we do) that the combined changes to the criteria for drawing legislative districts constitute one of the "greatest consequence for the general public" of adopting IP 5, Novick/Crew , 337 Or. at 574, 100 P.3d 1064, and therefore merits inclusion in the "yes" vote results statement, then the express reference to one change (the introduction of a compactness requirement) without also mentioning another important change (the elimination of the communities of common **113 interest requirement) causes the "yes" vote result statement to be underinclusive. Cf. Kain v. Myers , 336 Or. 116, 121, 79 P.3d 864 (2003) (caption that identifies measure's subject matter by mentioning some aspects, but leaving other major aspects unmentioned, is underinclusive). If it is not possible to fit both changes, along with other highly consequential results of IP 5 that we have identified, within the 25 words allotted for such statements in ORS 250.035(2)(b), the Attorney General may consider including a general phrase such as "changes redistricting requirements" and leaving the specifics of those changes to the ballot title's summary section. See Novick/Crew , 337 Or. at 575-77, 100 P.3d 1064 (Attorney General properly described most significant and immediate result of the enactment of proposed measure in general terms in "yes" vote results statement and then provided more particular results and explanation in summary).
With regard to the "yes" vote result statement, petitioner Uherbelau also contends that the phrase "[f]ewer hearings" is impermissibly vague and misleading because it does not specify that IP 5 would significantly reduce the number of public hearings that would be required before a final redistricting plan could be approved. Uherbelau suggests that readers of the Attorney General's "yes" vote result statement might erroneously interpret the "fewer hearings" phraseology to mean that there would be fewer legislative-type hearings, missing the point that public participation in the process of redistricting would be drastically curtailed. The Fletchall petitioners focus on the same phrase, but for different reasons: They contend that, because IP 5 does not affirmatively direct that there be fewer hearings, but only lowers the number that are required, the phrase "fewer hearings"-which suggests that fewer hearings necessarily will be held-is inaccurate. They also contend that the change in the number of required hearings is a relatively minor aspect of IP 5 that does not warrant inclusion in the "yes" vote result statement. The Attorney General responds that the phrase "fewer hearings" accurately captures the fact that IP 5 requires fewer hearings and thus sufficiently conveys the most immediate impact of adopting IP 5 with respect to deliberative activity, particularly when greater detail about the diminished opportunities for public **114 participation can be (and is) provided in the summary portion of the ballot title.
Both arguments are valid. The phrase "fewer hearings" implies that there will be fewer hearings, when IP 5 in fact provides that the commission "shall conduct at least one public hearing in each congressional district"-meaning that fewer hearings are required but that more are entirely possible. At the same time, the simple reference to "hearings" does not convey the important point that the hearings at issue are the public's *204 opportunity to participate in the redistricting process-not merely internal deliberations by the commission. Ultimately, then, the phrase "fewer hearings" is imprecise in a way that might mislead a voter who is attempting to understand the result of a "yes" vote. The Attorney General should attempt to add wording that corrects the misimpression that the present wording conveys, e.g. , "fewer required public hearings." If that is not possible, given the applicable 25-word limit and the obligation to describe other, more important results if IP 5 is approved, a description of the change in the number of required hearings could appropriately be relegated to the ballot title summary. Novick/Crew , 337 Or. at 575-77, 100 P.3d 1064 (details about results of a measure may be left to the summary).
Finally, the Fletchall petitioners argue that the "yes" vote result statement should include some reference to the fact that the measure authorizes the Supreme Court to produce a redistricting plan if the "Citizens Committee" fails to produce one. We agree with the Attorney General, however, that that aspect of IP 5 is not one of the measure's most significant effects and that the Attorney General could properly choose to disclose that effect in the summary, instead of the "yes" vote result statement.
2. "No" Vote Result Statement
Petitioner Uherbelau raises two issues with respect to the "no" vote result statement. She first challenges the statement's use of the term "elector" ("Elector can seek court review"). She insists that that word "elector" is unfamiliar to the voting public and that the more common term "voter" should be used instead. The argument is not well taken. Although we accept Uherbelau's point that the term "voter"
**115 is more commonly used than the term "elector," the use of the latter term does not render the Attorney General's "no" vote result statement incomprehensible or otherwise preclude its compliance with the "simple and understandable statement" standard set out in ORS 250.035(2)(c).
Petitioner Uherbelau also contends that the "no" vote result statement is punctuated in a way that would lead readers to understand it as a series of stand-alone legal consequences of a "no" vote, when, in fact, the statement seeks to convey that a "no" vote would "retain" each of the legal consequences appearing in the series. Petitioner Uherbelau observes that the problem can easily be remedied by changing the periods between the statements to commas. We agree with Uherbelau's assessment of the problem and its solution. Because the Attorney General's "no" vote result statement, as it now is punctuated, is not an easily understandable statement of the results of a "no" vote, it fails to substantially comply with the requirements of ORS 250.035(2)(c) and must be remanded to the Attorney General for modification.[6]
C. Summary
All three petitions challenge the summary in the Attorney General's certified ballot title. To pass muster on review, a ballot title summary must be a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." ORS 250.035 (2)(d). While the summary thus is similar to the "yes" vote result statement, in that both are required to notify voters of the measure's most significant effects or results, the allotment of 125 words to the summary "signals an intention to require the Attorney General to disclose in greater detail the proposed measure's major effects" by, among other things, including "additional important consequences or details that the result statement does not convey" and "helpful contextual information about the impact of the proposed measure on existing law." Novick/Crew , 337 Or. at 574, 100 P.3d 1064.
**116 Petitioner Uherbelau contends that the summary is objectionable in the *205 same ways that the caption and "yes" vote result statement are objectionable-it fails to clearly convey that IP 5 would repeal the existing constitutional provision for redistricting by the legislature, and it fails to convey that IP 5 would create and configure a new commission to carry out the task of redistricting. We agree that the summary is deficient insofar as it does not disclose those effects of the measure. Uherbelau also objects to the sentence, "Measure replaces current process with 11-member commission," on the ground that it illogically and wrongly suggests that IP 5 would replace an entire decisional process with a deliberative body. Again, we agree: The challenged sentence should be modified to make the comparison between the current and projected decisional arrangements more sensible.
Finally, petitioner Uherbelau challenges the sentence, "Changes constitutional, statutory requirements; district boundaries must have shortest possible 'aggregate linear distance.' " She contends that the vague reference to "changes" is inaccurate insofar as it fails to convey that IP 5 actually would eliminate some of the current statutory criteria for formation of legislative districts-including, most importantly, the requirement that legislative districts "not divide communities of common interest." ORS 188.010(1)(d). The omission of the current "communities of common interest" criterion is made particularly egregious, in Uherbelau's view, by the summary's express reference to the addition of a new criterion: "district boundaries must have shortest possible 'aggregate linear distance.' " Uherbelau contends that expressly mentioning that change to the redistricting criteria without also mentioning other important changes-most particularly, the elimination of the requirement that "communities of common interest" not be divided-causes the "changes * * * requirements" sentence to be underinclusive.
Petitioners David Rogers and Reyna Lopez (the Rogers petitioners) are also concerned about the summary's failure to mention the proposed measure's elimination of the current requirement that legislative districts "not divide communities of common interest," but for a different reason than those expressed by Uherbelau. In their view, the **117 elimination of the current "communities of common interest" requirement must be included in the ballot title's summary, regardless of what else is included about changes to the criteria for redistricting. That is so, they argue, because the "communities of common interest" requirement has been a central feature of Oregon redistricting law[7] and, indeed, federal constitutional law for many years, and has been recognized as an important tool for protecting the representativeness of legislative bodies and combatting the negative effect of gerrymandering. See generally Miller v. Johnson , 515 U.S. 900, 115 S Ct 2475, 132 L Ed 2d 762 (1995) (discussing racial gerrymandering and importance of drawing districts in a way that is sensitive to communities of common interest); Stephen J. Malone, Recognizing Communities of Interest in a Legislative Apportionment , 83 Va L Rev 461, 465 (1997) ; Jonathan Bernstein, All the Pretty Little Districts , The American Prospect, August 23, 2013, (https://prospect.org/article/all-pretty-little-districts) (accessed May 30, 2019) (describing how preserving communities of common interest redistricting requirement helps block gerrymandering efforts). In light of those facts, the Rogers petitioners argue, the proposed measure's elimination of the requirement that districts be drawn in a way that preserves communities of common interest is, in itself, a major effect of the measure that must be highlighted in the ballot title summary. The Attorney General responds, very briefly, that the summary "adequately conveys to voters what will happen if IP 5 passes," by stating that the measure changes the requirements for redistricting.
We conclude that mentioning the "shortest possible aggregate linear distance" requirement that is included in the proposed measure without also mentioning its elimination of a requirement of longstanding importance in Oregon redistricting law-that communities of common interest be preserved-causes the summary to be underinclusive and, ultimately, inaccurate.
*206 That brings us, finally, to the Fletchall petitioners' objections to the Attorney General's summary. Two of those objections will be familiar to the reader at this point, and **118 we can dispose of them in a shorthand way. We reject the contention that the summary is inaccurate or inadequate because it fails to use the terms "citizen" and "nonpartisan" in connection with the commission that IP 5 envisions. As we have already explained, those terms are not informative and are not neutral in this context. With respect to the Fletchall petitioners' objection to the statement in the summary that "[r]ural areas receive disproportionately high representation," we again observe that the wording must be changed to avoid value-laden terminology (in this case, "disproportionately"), but that the underlying point-that IP 5 gives rural areas more representation on the commission than population centers-must be included in the summary.
In a variation on an objection that they raised to wording in the certified caption, the Fletchall petitioners object to the summary's statement that, under IP 5, "court review" would be "limited to constitutional defects." They appear to be referring to their earlier argument that, because IP 5 places all procedural and substantive requirements for reapportionment in a new Article IV, section 6, of the Oregon Constitution, rather than spreading them between statutory and constitutional provision, it is wrong to suggest that judicial review under IP 5 is more limited than under current law because of its limitation to "errors constitut[ing] a violation of [the Oregon] Constitution or of the United States Constitution." Because we do not see the challenged statement as overtly setting out a comparison to judicial review arrangements under current law, we are not persuaded by the Fletchall petitioners' argument. Rather, the statement simply (and correctly) conveys the very strong limitation on judicial review expressed in IP 5: "No error or errors by the Citizen Commission shall be grounds for modification of the Final Redistricting Plan unless the error or errors constitute a violation of this Constitution or the United States Constitution."
The Fletchall petitioners' final objection to the summary is that it describes the proposed measure's new redistricting criteria with a statement that is incomprehensible to the average voter: "[D]istrict boundaries must have shortest possible 'aggregate linear distance.' " The Fletchall petitioners acknowledge that the "aggregate linear distance"
**119 wording is drawn directly from IP 5 itself, but they contend that this is an instance in which use of the measure's literal terms obscures its meaning rather than conveying the practical information that the law requires. See Cross v. Rosenblum , 359 Or. 136, 145, 373 P.3d 125 (2016) (Attorney General's use of measure's literal terms to define the term "abortion" obscured that terms meaning, rather than conveying the practical information about the measure that ORS 250.035 requires). The Fletchall petitioners insist that the summary should refer, instead, to a requirement that legislative districts be "maximally compact *** based on census tracts." The Attorney General responds that including the "aggregate linear distance" wording from the measure itself is preferable to the "maximum[ ] compact[ness]" wording that the Fletchall petitioners suggest because it specifically conveys how the quality of compactness is to be measured.
Although we are not convinced by the logic of the Attorney General's explanation, neither are we persuaded by the Fletchall petitioners' proposal. The relationship between the two redistricting requirements-that legislative districts be "as compact in area as possible" and that the "aggregate linear distance" of their boundaries be "as short as possible"-is not immediately evident. In light of that fact, we cannot easily accept the Fletchall petitioners' contention that the "maximally compact" wording that they suggest constitutes a more understandable version of the "aggregate linear distance" wording that the Attorney General drew from IP 5 and included in the summary.[8] In such *207 circumstances, we cannot require the Attorney General to substitute the Fletchall petitioners' preferred phrasing for the phrasing that appears in the measure.[9]
III. CONCLUSION
After considering the various arguments and objections raised by petitioners, we conclude that the caption, **120 "yes" and "no" vote result statements, and summary of the Attorney General's certified ballot title for IP 5 do not substantially comply with the requirements set out in ORS 250.035(2)(a) to (d). The certified ballot title must be modified, and we refer it to the Attorney General for that purpose.
The ballot title is referred to the Attorney General for modification.

Although IP 5 purports to repeal only Article IV, section 6, and contains no reference to the statutory requirements for apportionment set out in ORS chapter 188, the proposed initiative would effectively nullify those statutory requirements, at least as they relate to apportionment of state legislative districts, because the statutory requirements purport to control the reapportionment activities of only the Legislative Assembly and the Secretary of State-neither of which would be involved in reapportionment under the version of Article IV, section 6, that IP 5 would adopt.

The electors who filed timely comments were chief petitioners Kevin Mannix, Michele Fletchall, and Charles Lee, as well as Joe Baessler, David Rogers and Reyna Lopez, Becca Uherbelau, and the League of Women Voters of Oregon and League of Women Voters of the United States (collectively LWV). The LWV did not file a petition. The Lincoln County Republicans submitted comments after the statutory deadline for filing comments; it was noted that those comments were similar to comments made by the Secretary of State and chief petitioners.

Petitioner Uherbelau's third objection is that the hyphenated word "over-represents" must be counted as two words and that, in consequence, the caption certified by the Attorney General's caption exceeds the 15-word limit provided in ORS 250.035(2)(a). Uherbelau makes the same argument with respect to the use of the word "over-represents" in the "yes" vote result statement. We disagree: "Overrepresent" is a single word, and the Attorney General's choice to insert a hyphen does not make it less so.

Judicial review of a reapportionment by the legislature is available only upon the petition of an "elector of the state" and only for petitions filed before August 1 of the year of the reapportionment. For judicial review of a reapportionment by the Secretary of State, it is only for petitions filed before September 15 of the year of reapportionment. Or. Const., Art. IV, § 6 (2)(a).

We discuss the significance of IP 5's elimination of the "communities of common interest" criterion below, in the section of the opinion directed at the summary in the Attorney General's certified ballot title.

In addition to the two objections leveled by petitioner Uherbelau, the Fletchall petitioners vaguely assert that their concerns regarding the language in the certified ballot title's "yes" vote results statement are equally applicable to the "no" vote results statement. That assertion provides an insufficient basis for further review.

ORS 188.010(1)(d), enacted as Or. Laws 1979, ch. 667, § 1.

At the same time, it is not clear that the requirement that the "aggregate linear distance" of a legislative district's boundaries be as short as possible is a method for ensuring "maximum compactness," as the Attorney General argues.

The Fletchall petitioners notably have not challenged the summary on the ground that it fails to include any reference to the requirement that legislative districts be "as compact in area as possible" in addition to the "aggregate linear distance" requirement that it does include.